IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Crim. No. 1:15-CR-236** |
| | : | |
| **v.** | : | |
| | : | |
| **ANDREW PERSAUD** | : | **Judge Sylvia H. Rambo** |

## **M E M O R A N D U M**

Presently before the court is Andrew Persaud's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. For the reasons that follow, the court will grant his motion.

### **I. Background**

On October 14, 2015, a grand jury returned a six-count Indictment charging Defendant Andrew Persaud ("Persaud") with three counts of violating 18 U.S.C. § 1001(a)(2)(3) for making false statements, and three counts of wire fraud under 18 U.S.C. § 1343. (Doc. 1.) At some point prior to his initial appearance, Persaud retained Joshua Lock, Esquire to represent him. On February 23, 2016, pursuant to a plea agreement (Doc. 16), Persaud pleaded guilty to Count Two of the Indictment, which charged Persaud with falsely certifying that he paid his subcontractors on a multi-million dollar construction project at a United States Navy warehouse complex in Mechanicsburg, Pennsylvania in 2012 (*see* Doc. 1). The plea agreement originally contained Paragraph 30, titled "Appeal Waiver –

Direct," which provided that Persaud knowingly waived his right to appeal his conviction and sentence. (Doc. 16, ¶ 30.) However, Paragraph 30 was stricken from the agreement in pen and the change was initialed by Attorney Lock, Persaud, and Assistant United States Attorney Kim Douglas Daniel prior to the filing of the plea agreement. (*Id.*)

Persaud was sentenced on October 24, 2016, to twenty-one months imprisonment, three years supervised release to run concurrent with the term previously imposed by the Eastern District of Virginia, $100.00 special assessment, and $1,206,470.00 in restitution. (Doc. 39.) An appeal was not filed with the United States Court of Appeals for the Third Circuit. On May 1, 2017, Persaud filed a counseled motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 on the basis that his legal counsel was ineffective. (Doc. 42.) After the motion was fully briefed, an evidentiary hearing was held on October 10, 2017. (Docs. 47-49.)

At the hearing, Attorney Lock testified regarding the scope of his representation of Persaud, including that his fee agreement did not cover trial or an appeal. Because Persaud was previously prosecuted in the Eastern District of Virginia for crimes that were substantially similar to those in the Middle District of Pennsylvania Indictment, Attorney Lock explored the theory that the prior prosecution would bar or limit the Middle District matter. Ultimately, Attorney

Lock advised Persaud that the theory would not be successful. Regarding the plea agreement, Attorney Lock stated that it is his common practice to strike appeal waivers, such as the one contained in Paragraph 30, due to his aversion to them, but that he does not recall whether Persaud specifically requested that the appeal waiver be stricken in this instance.

Attorney Lock further testified that it is his usual practice to spend time with his clients following sentencing, but that he does not recall the specifics of his post-sentencing meeting with Persaud. While he suspects that they discussed Persaud's sentence and good time credits, he is confident that Persaud did not ask him to file an appeal. He also recalls speaking with Persaud by telephone on one or two occasions following sentencing, and although he does not remember what they discussed, he stated Persaud did not ask him to file an appeal during these calls. When asked if Persaud asked him to file an appeal at any point following sentencing, Attorney Lock testified as follows:

> He may have at some point, but I can tell you what I always do, particularly in cases like this, since I have very little interest at any time, but particularly at this point in my career, in standing in front of the United States Court of Appeals like a penny waiting for change.
>
> I just don't file appeals in cases where I don't believe there's any merit, number one. In cases where there's money, I refer them to a colleague . . . from the Philadelphia area, Peter Goldberger. And in cases where there's not, I advise that, pursuant to general instructions, I don't remember them being given in this case

> specifically, provided by the sentencing court to Defendants at the time of sentencing, to submit a letter to the Clerk of Courts, at which time it's then considered the notice of appeal, at which time they'll make an appointment of counsel.

Later in his testimony, Attorney Lock stated that, at some point, he suggested that Persaud write a letter to the Clerk of Courts to pursue an appeal, but could not say if that conversation occurred before or after sentencing.

Next, Persaud testified that he discussed filing an appeal with Attorney Lock at the time he signed the plea agreement. During their post-sentencing meeting, Persaud insisted that an appeal be filed and does not recall, at any point, Attorney Lock instructing him to request an appeal by filing a letter with the Clerk of Courts. Persaud testified, and presented supportive telephone records, that he exchanged several telephone calls with Attorney Lock in the weeks following his sentencing but prior to his surrender on November 21, 2017.[1] (Def. Ex. D-2.) Specifically, the telephone records indicate that five outgoing calls were placed to Attorney Lock, and three incoming calls were received from Attorney Lock during this time period.[2] (*Id.*) Persaud testified that, during one such call on October 28, 2016, they discussed filing an appeal to preserve his rights, and Attorney Lock

---

[1] Attorney Lock identified his phone number and agreed that the telephone records indicate multiple calls between him and Persaud's phone number between October 26, 2016, and January 30, 2017, but he testified that he did not specifically remember the calls. (*See* Def. Ex. D-2.)

[2] Three outgoing and two incoming calls occurred during the time that Persaud could have timely filed an appeal.

4

stated that he would "look into it," but that Persaud did "not have a good chance [on appeal]."

Lastly, Marina Persaud, Defendant's wife, testified that she called Attorney Lock multiple times after her husband was incarcerated to discuss her husband's appeal, and that she left several voicemails regarding the appeal but never received a response.[3] Due to the lack of communication, Mrs. Persaud contacted her husband's current counsel, Todd Mosser, Esquire, in early 2017.

## II. Discussion

In the instant motion to vacate his sentence, Persaud argues that his counsel was ineffective because he failed to file an appeal after being instructed to do so.

A defendant in a criminal matter may challenge his conviction or sentence on the basis that his legal counsel was ineffective pursuant to 28 U.S.C. § 2255. If a petitioner is entitled to relief under § 2255(a), "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

In *Strickland v. Washington*, the Supreme Court set forth the legal framework for establishing ineffective assistance of counsel: (1) a defendant must prove that his attorney's performance fell below an objective standard of reasonableness; and (2) that the deficient performance prejudiced the defense to the

---

[3] Persaud's telephone records indicate eight outgoing calls to Attorney Lock between December 31, 2016 and January 30, 2017. (Def. Ex. D-2.)

degree that it deprived the defendant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The Supreme Court applied *Strickland* to counsel's failure to file an appeal in *Roe v. Flores-Ortega*, 528 U.S. 470 (2000). The court recognized that counsel provides ineffective assistance by disregarding the client's explicit instructions to file an appeal. *Id.* at 477. In these instances, "[p]rejudice is presumed from counsel's failure to file a notice of appeal when so requested by a client." *Solis v. United States*, 252 F. 3d 289, 293-94 (3d Cir. 2001). Moreover, the Supreme Court directed courts to conduct a "'circumstance-specific reasonableness inquiry' regarding counsel's failure to file a notice of appeal whenever the client did not express a desire to appeal." *Battaglini v. United States*, 198 F. Supp. 3d 465, 472 (E.D. Pa. 2016) (quoting *Flores-Ortega*, 528 U.S. at 478).

The circumstance-specific reasonableness inquiry begins by considering the attorney-client consultation. *Flores-Ortega*, 528 U.S. at 478. "If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Id.* If counsel did not consult with the defendant and no notice of appeal was filed, counsel performed deficiently "when there is reason to think either (1) that a rational defendant would want to appeal . . . , or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480.

6

Additionally, the consultation itself can be deficient. The Supreme Court defined "consulting" as "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.* at 478. As to the prejudice prong of *Strickland*, a defendant "must demonstrate that there is a reasonable probability that, but for counsel's [ineffective assistance], he would have timely appealed." *Id.* at 484.

In this case, Attorney Lock's memory regarding whether Persaud asked him to file an appeal is hazy. On one hand, he testified that Persaud never requested that an appeal be filed, while on the other hand, he stated that Persaud may have asked him to file an appeal at some point. Conversely, Persaud testified that he discussed filing an appeal with Attorney Lock at the time the plea agreement was signed and that immediately following sentencing he insisted that Attorney Lock file an appeal. The telephone records and Mrs. Persaud's testimony serve to corroborate Persaud's testimony. Furthermore, although Attorney Lock's fee agreement did not cover an appeal, it is well established that the filing of a notice of appeal is "a purely ministerial task that imposes no great burden on counsel," *id.* at 474, and therefore, counsel may perform deficiently by failing to file a notice of appeal despite a limited scope of representation.

After weighing the evidence, the court finds that Persaud instructed Attorney Lock to file an appeal. Because Attorney Lock failed to do so, he performed

deficiently and it is presumed that his failure to file a notice of appeal prejudiced Persaud. The remedy for Attorney Lock's ineffective assistance is to re-enter the initial sentence so Persaud has an opportunity to file a timely direct appeal. *Hodge v. United States*, 554 F.3d 372, 381 (3d Cir. 2009). Accordingly, the court will vacate Persaud's sentence and re-enter that sentence in order for Persaud to file a direct appeal.

Even if the court had not found that Persaud instructed Attorney Lock to file an appeal, a circumstance-specific reasonableness inquiry would also result in granting Persaud's motion. It is apparent that Attorney Lock did not appropriately consult Persaud as to the advantages and disadvantages of taking an appeal or make a reasonable effort to determine Persaud's desire in this regard. Additionally, based on the procedural posture of Persaud's prosecution – *i.e.*, that his indictment in the Middle District was substantially similar to that in the Eastern District of Virginia but was not pursued until after he completed his imprisonment in the Eastern District of Virginia matter – and that the appeal waiver was stricken from Persaud's plea agreement, it is reasonable to believe that Persaud was interested in appealing and was prejudiced by Attorney Lock's failure to file an appeal.

## IV. **Conclusion**

For the reasons stated herein, the court will grant Persaud's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 because his

counsel provided ineffective assistance by failing to file a notice of appeal. The court will vacate the sentence and order that sentence be re-entered. An appropriate order will issue.

s/Sylvia Rambo  
SYLVIA H. RAMBO  
United States District Judge

Dated: December 15, 2017